Good morning. May it please the Court, my name is Nick Wazorek. I represent Secret Service agent Michael Horvath and other similarly situated Secret Service agents in this matter. Secret Service agents routinely and other federal law enforcement officers routinely put their lives on the line in pursuit of their mission. It is a fact that the Secret Service is a federal government and I think one of the explanations for that lies in the facts of this case before your honors today. This is a case involving an important issue of overtime pay for Secret Service and other federal law enforcement officers. They pertain to pay equity for LEOS, law enforcement officers, and the agency practice of depriving agents of earned overtime for actual time worked. There are three reasons why the lower court erred in dismissing the class action without providing opportunity for amendment. The first and most straightforward issue is the court's finding that the agency policy of requiring overtime hours be worked consecutively, two hours consecutively, was rational. In our view, the agency's OPM's decision to include that word totally misconstrues the language of the statute. 5 U.S.C. 5542E simply says that at least two hours of overtime must be worked by the agent in order to qualify for the pay enhancement. How common is it for an agent to say work an hour before the regular work day begins and then work an unscheduled additional hour after the work day is supposed to be over? As we put into our briefing, at least in Mr. Horvath's case, that happens. You can be called into the office early for a meeting. You can be asked to stay late for other exigencies to come up during the day. We did not – I'm just wondering, is it a very occasional thing or is it a very regular thing? I'm trying to just – I'm just curious about the overall – My understanding, and we were not able to get into that fact as part of the underlying case, but I think if we did, the evidence that would come out would be that these agents are on call and they are often called in early and often told to stay late and often asked to work unscheduled time whenever the time is required for it. The LEAP pay compensates them for all unscheduled overtime, right? That is what LEAP is intended to do. That is not what the practice of the agency in this case is. As we've noted, one of the other – I don't understand that answer. The question is, does someone have a claim for unscheduled overtime? And the answer is, as a result of LEAP, no, right? LEAP is intended to compensate for unscheduled overtime. The overtime we're talking about here in many cases is scheduled overtime. I understand that. Right. But you're right. In the strict sense of what availability pay is, it is intended to compensate for unscheduled overtime. Do you know what the rationale is behind the regulation requiring consecutive? Is there something about consecutive that suggests scheduled? Do you know what the rationale is? I think there is no rationale. I think it was simply a construct by the agency's regulation to deprive Secret Service agents of overtime if they did not hit that threshold, which could lead to the incongruous result that we described in our briefing, that Mr. Horvath could hypothetically work two sessions of overtime in a given day, each 219 minutes long, and receive overtime because it is not two consecutive hours. So that would be something like 238 free minutes of time as a result of that regulation. And can I ask you also, I understand, I just want to make sure I understand your position correctly. Your position is that the statute wasn't ambiguous as to how to calculate the two hours. As we said in our briefing, plain English is persuasive many times, and the phrase at least two hours is not ambiguous. It's in harmony with multiple other pay statutes across the board in terms of the at least two or at least something. So the insertion of the consecutively we think is simply an effort to agency's effort to save some money by making Secret Service agents work overtime without compensation. So the agency interpretation we don't think is due to any deference. The plain language dictates the outcome, and we think the Court erred in agreeing that the consecutively modifier was appropriate. Do you want to speak to the Doe opinion, where this Court said for a different statute, you know, order or approving overtime? We said, well, that could be approval or order in writing, or it could be verbal. It's unclear from the face of the statute itself, so therefore it was a reasonable interpretation for the government to come in and say, we select that it needs to be in writing as opposed to verbal. And now here, I suppose the government is saying, well, when it says an agent has to parts of the day, on the face of the statute, it doesn't say one way or the other. As in Doe, we select the choice of making it consecutive. In Doe, the issue was interpretation of the ordinance. As you said, is it verbal? Does it must be in writing? That is different from what is going on here, where the language of at least two hours is not subject to other interpretation. It's not subject to written or verbal command. It's numbers. It's time. So the insertion of consecutively into at least two hours is different from the Doe case, because that was an interpretive issue. This is not interpretive. This is limiting and qualifying. And again, it flies in the face of just the plain language meaning of the words. And we cited Wexler and Lantek cases. In essence, there is no gap to fill in the phrase at least two hours. There is no interpretation required. And hence, the agency's desire to limit it and, in essence, cut off overtime is inappropriate in our view. The second issue before the Court where we think the underlying Court erred was this issue of the so-called flex policy. So this is one where the agency would, after the work week had been set, call the agent and say, on a Thursday night, you're taking tomorrow off because we need you to work on Saturday, which is a violation of every scheduling provision in 5 CFR Chapter 610. It's clear the intent behind that was to get agents to work. And the report below here on this issue dismissed for lack of jurisdiction under the Tucker Act, right? Correct. And we think that was improper. I'm struggling with that. So why is it that you, you know, are able to distinguish the Adams cases which talk about 6101? I realize you're asserting another statute on top of 6101. Correct. But the thing I'm struggling with is that I look at the case law and it says I'm supposed to look at what you're really arguing as opposed to what you're saying you're arguing. Right. And when I look at that, I see 6101, which this Court in Adams said is not money mandated. The issue in Adams were the agents trying to get clarification of their request for a, quote, basic 40-hour work week. So in Adams, that's fair that that's not a money mandating question. They're trying to solidify their schedules as they had been set and their schedules were being manipulated. Here, the money mandating statute is 5 CFR 610. By making someone take a Friday off and work on Saturday, you are depriving that agent of potential overtime premium for the work on the weekend. And, again, this was a policy that was put in place during sequestration. It's now been abandoned. Query the question, why would the agency abandon this policy if it was ironclad or solid? We think it was simply a device to, again, try to limit the liability for overtime paid to agents that were called upon to work during normally premium-paced areas. So I think the Adams case on the jurisdictional question is slightly different because this is a pure money mandating issue. It's their entitlement to their overtime. You're saying, although in Adams we said Section 6101 is not money mandating, somehow in the context of this case, Section 6101 is money mandating? The money mandating statute, and I misspoke and I apologize, it's Section 5542 of 5 U.S.C. That's the premium-paced section. So 6101 gets you to 5542. I guess that's the concern I have is that in order for you to have a claim under 5542, at least under your theory, it is based on a claim that the government violated the scheduling requirements of 6101. And so the crux of your argument is really a dispute over 6101, not really necessarily 5542. Well, scheduling with the impact of them not getting premium pay because the other element is they were perhaps given an alternative day off, and if they didn't lose it within that two-week pay period, it was gone. So they were deprived of that benefit as well, whereas under the ordinance, they should be allowed to take those leave days up through the 26-pay period. So that was another use-it-or-lose-it type argument. All of these play into an entitlement to money because all of these play into how overtime is calculated and how the agency can, in our view, at least manipulate overtime to achieve cost savings. Quickly, the third issue is this so-called 822 scheduling. This is where the LEAP comes in. So we think the agency in this case, and this is common among multiple other agencies that we have experience with, they use LEAP as a bank for overtime, and that is not what LEAP is intended to do. The statutory definition of LEAP is unscheduled duty, and the pay enhancement is designed to keep these guys somewhat satisfied in their jobs from being asked to stay late and being asked to stay early, being asked to stay at a post or at a rally or a convention for 16 hours or what have you. So that enhancement is not an across-the-board allowance to the agency to just calculate 10-hour days in lieu of 8-hour days. Unscheduled overtime has been morphed into scheduled overtime by the agency, which deprives agents like Mr. Horvath of the overtime benefit he normally would get. The agency should know at the beginning of each week what its needs are, and they typically just schedule 40 hours for Mr. Horvath, in his case, Monday through Friday, but routinely ask him to work extra time, work overtime, schedule him for 10-hour days, and in the other example, flex. So we think the goal of LEAP has been perverted somewhat into just, again, a bank for scheduled overtime, which, again, deprives agents like Mr. Horvath of the ability to obtain the benefit of premium pay. And the Bradley case we saw in our brief, I think, is exemplary. Bradley dealt with a situation after the Oklahoma City bombing where it was unscheduled duty. These people had to stay on the job for that period of months while the emergency took place. Here, the scheduled duty becomes just part of the weekly schedule, and again, using LEAP as a credit, which we don't think legislatively it was ever intended to be, and statutorily it lies in the face of the plain language of the statute. I had asked to reserve a couple of minutes for rebuttal, so if I may, I'll withdraw it now. Can I ask you one question? Of course. I wanted to ask you, I noticed that in your brief, you seemed to agree that a regulation by OPM cannot provide jurisdiction under the Trump Act. Does that mean that you're, are you still pressing with your view that you, that the court had jurisdiction of your compensatory time argument? I think that because this is a, implicates the overtime statute, it is money mandating, and the regulation does get us to jurisdiction because, again, overtime pay is what's implicated, not an interpretation of schedule or how hours are scheduled, it's how much they're paid. Even though that regulation is an OPM regulation which can't provide jurisdiction under the Trump Act? It ties back to the Section 5542 in our view. Okay, we'll give you two minutes for rebuttal. Thank you. Okay. May it please the court. My name is Sosan Bae on behalf of Defendant Apali, United States, and with me is Steve Javala from the Department of Homeland Security. As demonstrated- So, we asked questions about 5542E, the exception there, and whether the addition of the consecutive requirement in the regulation is appropriate. And let's assume for the moment that the statute on its face is ambiguous. Why is the consecutive requirement a reasonable interpretation of the statute? There's nothing in the history of the adoption. I looked at the Federal Register notice. It doesn't say anything about why this is being done. What is the theory of it? Your Honor, we also looked and did not find history behind the OPM regulation. However, we would submit that it's appropriate because, as this court found in Doe, OPM is entitled to offer substantive interpretations of the statute. That's true, but it's got to be a reasonable interpretation. It's got to make some sense in terms of the policy of the statute. Why does imposing a consecutive requirement make sense in terms of the policy of the statute? Your Honor, one of the policy reasons is that, according to Mr. Horvath's own briefing, unscheduled overtime, such as what this two consecutive hours is about, can be at the agent's discretion. And the two consecutive hours actually limits the level to which an agent is able to abuse the two hours requirement. Unscheduled overtime— How can an agent abuse the two-hour requirement? I'm sorry, I didn't hear you. I didn't understand what you said. Did you say the agent abused— No, Your Honor, we're not saying that an agent did abuse the two-hour requirement. We're saying that the reason for making the two consecutive hours requirement would be that if you did not make the two hours consecutive, it would be easier for agents to, if you would say, game the system in order to reach. One thing is that the unscheduled overtime is calculated in 15-minute increments, and because an agent has the discretion in certain circumstances to decide whether they need to work so-called unscheduled overtime, if you don't have the two consecutive hour requirement, then an agent could just find that it had to work unscheduled overtime for 15 minutes here and 15 minutes there, rather than what the purpose of the statute is. But it has to be two hours in total, right? I mean, not just 15. How do you have 15 minutes here, 15 minutes there, in one day add up to two hours? It would be possible, for instance, if an agent worked an hour and a half of unscheduled overtime in the morning and then thought, hey, I have half an hour left, assuming that the consecutive requirement were not there, could say, hey, I have half an hour left, and you're at the end of the day, and maybe you decide within your discretion that you can work another half an hour of unscheduled overtime in order to hit that requirement. Why couldn't it happen even if the hours were consecutive? I'm not sure that I see a greater potential for abuse in situations where it's not consecutive than where it is consecutive. Your Honor, the reason that it would be less likely to happen if the two hours were consecutive is because the purpose of this section of the statute, as it says, it refers to protective services. So the scenario in which this was envisioned being used was a scenario, say, if there was a campaign event and the candidate's plane ran late, and therefore the campaign event started late, and so the agent would have to work two consecutive hours after that. So in essence, it was meant to compensate agents for times when duties involving protective services were supposed to go a certain amount of time, and then they went over, and the policy was that if they went over by at least two hours, which in this case would almost always be two consecutive hours because it's a campaign event type situation, then they would be eligible for that. That's not in the statute. None of this is in the statute. Your Honor, I agree. It is not within the history of the statute or the regulation. And no history of the regulation either, right? We checked, and we did not find anything on that point. Is there any interpretation of the regulation after it was issued that suggests why it exists? There may be something in the agency's policy documents, but there is nothing on the record that we have seen. If this case were to proceed further, we would certainly look to see if there was anything on the record with the agency itself after the regulation was implemented. Your Honor, you haven't looked? I know that there are policy documents within the agency that talk about the two-consecutive-hour requirement. We have not seen anything thus far that explains the reason for this two-consecutive-hour requirement existing, but I don't want to foreclose the possibility that such a document exists. I do know that there are policy documents that do talk about the two-consecutive-hour requirement as something that's necessary for agents to be eligible for this protective services exception. And just to confirm, there's no theory that you're aware of where making the requirement of the two-hours consecutive is somehow a benefit to the agent, whether it's to calculate some type of overtime pay or leap pay or something else. There's no advantage to the agent. There's no scenario where it's an advantage. Is that right? Your Honor, we are not arguing and have not argued that the two-consecutive-hours requirement would be an advantage to the agent. Is it possible that the two-hour consecutive requirement is because two hours of unscheduled overtime looks more like scheduled overtime? I'm not exactly sure I'm understanding Your Honor's question. As I understand the statute, putting aside unscheduled overtime, if there's scheduled overtime and you're not compensated for the first two hours of scheduled overtime, and then you are compensated for the additional time worked overtime in addition to two hours, right? Your Honor, I would say that you are compensated for those first... Wait, wait, wait. Answer my question. Is that right or not? I think it is not right. As Your Honor said that you're not scheduled for the first two hours of overtime, or sorry, you're not compensated for the first two hours of overtime, however, you are compensated for that through the leap enhancement. So it's not that Mr. Horvath is not getting compensated at all for those first two hours. I'm not talking about the leap enhancement. I'm talking about the right to additional overtime. The way the statute is written, if there are two hours of scheduled overtime over the eight hours, you're not compensated for that in terms of additional overtime pay. You have to work more than those two additional hours to get overtime compensation, right? Yes, Your Honor. Pursuant to 5542D, which explicitly... And so the question is, this seems to be making an exception to that and saying that in some circumstances, unscheduled overtime will count toward that two hours, but it has to be consecutive unscheduled overtime to qualify, right? I think I agree with what Your Honor is stating, which is that, yes, the protective services exception does allow for all hours of overtime after the normal eight hours to be compensated. So what I'm asking you is, is the purpose of the regulation to treat unscheduled overtime the same as scheduled overtime if it is in a two-hour block, because it looks more like scheduled overtime. Does that make sense, or does that not make sense? I understand what Your Honor is saying. Unfortunately, because we have looked and there does not appear to be a history behind this, I'm not aware of whether that is the purpose of the regulation or not. I would say that the two hours is the same amount of time that's referred to in subsection D of the same statute, but I don't know whether the intent of that was... Your Honor, your problem is that you're not, it seems to me, showing us anything which suggests a coherent purpose to this consecutive requirement. That's the problem. Well, Your Honor, again, we would submit that the at least two hours statement is ambiguous, and because it's ambiguous... No, no, fine. It's ambiguous. I think I agree with you. It's ambiguous, but you've got to do more than have ambiguity. You've also got to have a reasonable interpretation that makes sense in terms of the policies of the statute. You haven't come up with a reasonable interpretation as to why consecutive is a reasonable interpretation of the statute. Well, as I said in response to Judge Stoll's question, I think a policy reason would be so that the purpose of the protective services exception is for circumstances involving protective services. And in that case, it is most likely that those two hours would be consecutive anyway, and it takes away the potential for abusing the overtime system in order to gain additional overtime not subject to leap, in that the agent could, again, break these up into chunks and abuse their discretion. Whereas if you have the two-hour requirement, because that would just consist of a shift where you have to stay longer, that was not foreseeable. Is there a statute where, according to what you were saying, the agents have the unilateral discretion on when to work overtime? Your Honor, I'm not aware of a statute to that point, but Mr. Horvath makes the point both in his complaint and in his appellate briefing that the agents do have some amount of discretion to remain at their post if a foreseeable situation occurs, such as a campaign event going along. And I don't think that there is dispute between the parties that the agents do have some— I think a campaign event is going on at which they are posted. Yes. And that goes on longer than expected. That's the situation you're talking about, them having the discretion to stay longer? No, Your Honor. That would be the situation for which I think the statute was envisioned, which is a protective services type situation, or that they had to get there earlier than anticipated because the candidate got in earlier. The discretion which I'm talking about that has a potential for abuse is if you break up the two hours, the agent has the opportunity to then say that they took half an hour here or that they took X amount of time to commute there, rather than it simply being a situation of them remaining at their post for at least a two-hour amount of time, which is what the protective services exception was intended to do. Just to make clear, this is two hours in one day, right? This is two hours in one day, yes. Just so I understand how 5542D and E work together. Is it a way that it works is an agent is scheduled to work 12 hours on a particular day, and then if he or she is scheduled to work 12 hours a day, eight of those hours will be regular pay. The next two will be credited to leap pay, and then the last two will be scheduled overtime pay compensation. Yes. And then now we go to 5542E. If for some reason that agent is required to, or I guess at his or her discretion, feels like they need to work extra hours, if that person works two hours of overtime beyond that 12 hours, then what happens? All four of those hours between hours 8 and 12 are now going to be the agent will be collecting overtime pay? So the exception in E that you just talked about, it would not have to work those 12 hours plus an additional two hours. It would be that you have your normal eight hours, and then if you fall under the protective services exception in E, then any hour above the eight hours you would get scheduled overtime for as long as two hours of that, two consecutive hours pursuant to the OPM regulation are also unscheduled hours. But you never get overtime compensation, forget about the leap aspect of this, but additional overtime compensation until you've worked over 10 hours, right? Yes, Your Honor. I think under any interpretation of the statute, you would not get scheduled overtime compensation unless you've worked at least 10 hours. So the question here in 5542E is whether in calculating that 10 hours you're going to get credit for the unscheduled overtime. Yes, Your Honor. I would like to just move quickly, since I'm almost out of time, to the Secret Service's use of flex days. I'm happy to entertain any questions that Your Honors have regarding the Secret Service's use of this flexing policy. However, as the trial court pointed out, it lacked jurisdiction over and pursuant to Adams in which this exact same scenario was posited. This court has also held that there is no jurisdiction over claims pursuant to the flexing policy. My final point is that Mr. Horvath, it looks like he is conflating the use of the flexing policy with use of compensatory time off. He keeps referring to it as compensatory time off. However, that is a specific practice pursuant to 5 U.S.C. 5543, whereas the flexing policy has nothing to do with compensatory time. So there is no authority under which he would be allowed to get that restored because he had to use it within a two-week period. Can you talk about the regulation 5 CFR 610.121B3? That was the regulation that Mr. Horvath was pointing to in the briefing about how the regulation seems to contemplate under certain circumstances how agents like him could qualify for premium pay. Yes. And so your argument is, well, this is just a little old OPM regulation, so it's not a money mandating law that triggers jurisdiction with the Court of Federal Claims. Is that right? Your Honor, yes. OPM regulations. Okay, so then I guess I'm wondering, there has to be some route of remedy should the agency somehow violate regulation 610.121B3. What would be that route of remedy? If it's not to the Court of Federal Claims, where do they go? Do they go to the Department of Labor, or what do they do? Your Honor, I believe that what would happen is that you would be eligible for back pay if you were to establish that the agency knew in advance that it needed to schedule overtime and treated that overtime as unscheduled instead. However, that is not what happened with the flexing policy. But that's not the question that was asked. The question is, you're saying that the Court of Federal Claims is not the right route for resolving the merits of the issue. So where would somebody go to resolve the merits of that issue? Your Honor, off the top of my head, I'm not sure what avenue someone would go to resolve the merits of a scheduling violation. I would think that that might be something that they could bring up internally first, but I would have to confer with agency counsel to be able to answer that question for sure. There has to be some method of resolving this, right? A scheduling violation? Yeah, it couldn't possibly be that this regulation is just a counterfeit regulation. It's just a collection of words that doesn't really mean anything or have any teeth. Your Honor, I believe it could possibly trigger an OIG investigation, but I don't want to say that as an absolute certainty without talking to agency counsel. But I do believe that they could raise it as a potential violation that OIG could look at. I understand I'm out of time. I just wanted to make one last quick point, which is that Mr. Horvath's own exhibit to his complaint at Joint Appendix, page 50, actually talks about what happens if an agent is unable to use one of their days that they were directed to flex. And it states on that page that if you are unable to flex, your AIC, which is a supervisor, knows the protocol for gaining standard overtime approval. I'm sorry. Could we go back to the 5542D and E colloquy? I got personally lost between the exchange you had with Judge Dyke. Could you just run one more time through how you understand this works? 5542D says you get overtime pay if it's in excess of 10 hours on that day. 5542E says, well, maybe you're going to get overtime pay if you're doing protective services. Yes. And you've got two hours of unscheduled overtime work. How do these two work together? Could you give me another example? Sure. So, Your Honor, Subsection E is an exception to Subsection D. Subsection D sets out the general rule, which I think, as Your Honor stated, is that you have to work 10 hours in order to be eligible for any scheduled overtime. Above that 10 hours, anything else would be compensated by LEAP. And then Subsection E is an exception to the rule set forth in Subsection D, and it states that if you are doing protective services that day, which is a specific kind of work that agents can do on that day, the example I used was, say, working at a campaign event that day, then you would be potentially eligible for scheduled overtime for every hour over your standard eight-hour workday, as long as you worked at least two hours of consecutive unscheduled overtime that day. And then at least some amount of scheduled overtime above that. Okay. But it would be unscheduled, right? Because it's at least two hours of overtime work not scheduled in advance. Yes, Your Honor. So getting back to my original fact pattern of someone working 12 hours of scheduled time, four hours of that would obviously be overtime. But then the person has to work an additional two hours of unscheduled time, then the four hours above hour eight of scheduled work would all be premium pay. Yes, Your Honor. But then the last two hours of that day, the unscheduled time, that would be LEAP pay? No, I believe in that situation, Your Honor, that then all six of those hours you would get premium pay for beyond the LEAP. Okay. I'm not sure that's true. The only way you can get overtime compensation, and please use that term the way I'm using it, is not to include the LEAP compensation. The only way you can get overtime compensation under D is if you work more than 10 hours of scheduled overtime. Yes. Then you get the additional. But you don't ever get compensated for unscheduled overtime. What E says is if you have two hours of unscheduled overtime, you can treat that like scheduled overtime and then be compensated for all the scheduled overtime above the 10 hours, the original eight hours, plus the two hours of unscheduled. Then you get the four hours scheduled, right? Yes, Your Honor. I was momentarily confused. Even under subsection E, you would not get compensated for scheduled overtime for that two-hour unscheduled overtime, but you would then get. Why not? It says all hours of overtime work scheduled in advance of the work week shall be compensated under subsection A if you're doing protective services and you're doing two additional hours of unscheduled duty. Yes, Your Honor. So then why wouldn't it be all hours of overtime work scheduled, that is to say, between hours 8 to 12 that were scheduled for that day? Yes, Your Honor. Under that scenario, you would get compensated for hours 8 to 12. You just don't get compensated for the unscheduled overtime. Yes, Your Honor. I think Your Honor has it exactly right, which is that you would. Say you had a 14-hour day, as you posit, the first eight hours would be your normal pay. And this is all assuming protective services. Hours 8 through 12, which were scheduled overtime, you would get premium pay pursuant to subsection A for. And then those two hours of unscheduled overtime would be compensated pursuant to leave in a scenario under subsection E. If Your Honors have no further questions. We would just respectfully request that this Court affirm the decision of the trial court. Mr. Wisserath. Thank you, Your Honors. And I would point out that as our last two minutes of discussion seemed to point out, the trial underlying court did not have a clear path to render its decision, which would essentially shut the door on Mr. Horvath in light of these interpretive issues. Clearly there is ambiguity inherent in these statutes because 5542D conflicts in part with 5542E, and both of those conflict with 5545A, the leap statute. I don't see that they conflict. The question is how to interpret it. Well, the example of E being the prime one, a fair reading of E is that for, which is what the agency has done, that secret service agent should be entitled to four hours of premium pay under a fair reading of that. I think that was worthy of further consideration by the Court. The linchpin of this entire case is that the agency's practices have turned unscheduled duty into two hours of scheduled overtime without any compensation to the agent. Are you talking about the 822? 822. You're essentially getting two agents to do the work of three. That's the linchpin. There is reason the Secret Service has this low morale problem. Part of that is the agency's scheduling 12-hour days saps morale, and we submitted information to the trial court at Appendix 179-629 regarding the state of morale at the Secret Service agency, which is not good. So the basic question for this Court is how much pay inequity must Mr. Horvath and his colleagues suffer as a result of an agency trying to extract? No, the question is not inequity. The question is what's the statute for that? Pay, how much loss of pay under their reading of the statute must they suffer as a result of an agency's decision to try to, in our view, at least manipulate the statutory mandates to deprive them of the overtime they're entitled to. And with that, I thank you very much for your time. Okay, thank you. Thank both counsels. Case is submitted.